Argued and submitted May 12, affirmed October 27, 2010

Robert DORSZYNSKI,
Conservator for Dorothy Phillips,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

State of Oregon
20071851; A140800

242 P3d 657

J. Michael Alexander argued the cause for petitioner. With him on the briefs was Swanson, Lathen, Alexander, McCann & Prestwich, PC.

Denise G. Fjordbeck argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Karla H. Ferrall, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Petitioner, a lawyer, and also the court-appointed conservator for Dorothy Phillips, seeks judicial review of a final order of an administrative law judge (ALJ), denying Phillips's eligibility for medical or service benefits offered by the Department of Human Services. In particular, petitioner assigns error to the ALJ's finding that Phillips's resources exceeded the required minimums for the Oregon Supplemental Income Program Medical (OSIPM) and Qualified Medicare Beneficiary (QMB) programs, based on a conclusion that $5,000 that petitioner had placed in a lawyer trust account was "available" and "countable" as a resource under OAR 461-140-0010 and OAR 461-140-0020(2)(a) and (e).[1] We review the pertinent factual findings for substantial evidence and the legal conclusions for errors of law. ORS 183.482(7), (8). We conclude, as a matter of law, that the funds in the lawyer trust account were available and countable under OAR 461-140-0020(2)(a), and we affirm the ALJ's order.

The material facts are taken from the record and the ALJ's order and, unless otherwise noted, are undisputed. Petitioner was appointed by the court in May 2005 to serve as the conservator for Phillips, a 75-year-old woman who currently resides in an adult foster home. On August 12, 2005, the court ordered the transfer of $5,000 from Phillips's assets to the lawyer trust account of the attorney for the conservator, who also happens to be petitioner. Petitioner transferred the $5,000 on August 22, 2005, and, in his role as conservator, managed the account to pay administrative expenses and attorney fees. The ultimate fees of the guardian and conservator were subject to court approval.

In his role as conservator for Phillips, petitioner applied for and successfully obtained OSIPM and QMB benefits as well as community-based waivered services[2] through

---

[1] All references to the Oregon Administrative Rules throughout this opinion are to the 2008 edition, which contains the administrative rules filed through November 15, 2007.

[2] "Community Based Waivered Services" are services approved for Oregon by the Centers for Medicare and Medicaid Services for seniors and people with physical disabilities in accordance with Sections 1915 (c) and 1115 of Title XIX of the Social Security Act. OAR 411-015-0005(16). These services allowed Phillips, who

the department for Phillips's care. Both the OSIPM and QMB programs have resource limits for eligibility—$2,000 and $4,000, respectively. To be eligible for waivered services, a claimant must be eligible for OSIPM.

When Phillips first began receiving medical benefits in November 2005, she was already receiving Social Security benefits and had a pending Veterans Administration (VA) benefits application. In December 2006, the VA disbursed to Phillips a lump sum payment of $11,188 in retroactive VA benefits and began providing successive payments in excess of $700 a month. Petitioner sent a letter to the VA in January 2007 stating his belief that Phillips had been overpaid and requesting that the VA verify her correct benefit amount. The VA responded in July 2007 that it would reduce Phillips's monthly payment because she was receiving Medicaid, but it determined that no overpayment would be established and that Phillips could keep the previously issued benefits.

In September 2007, petitioner submitted a Medicaid redetermination application to the department. Because of the VA benefits, Phillips's reported resources exceeded eligibility limits. To bring Phillips's resources back under Medicaid eligibility limits, on October 25, 2007, petitioner sent the department $8,000 on her behalf as reimbursement for past assistance. Phillips's remaining account balance was $6,800.78. On October 31, 2007, petitioner sent a letter to the department reporting that he had transferred $5,000 of that balance to the lawyer trust account, to be set aside for the payment of future administrative payments and attorney fees. The department thereafter notified Phillips that her benefits case would be closed effective November 30, 2007, because her resources—including the $5,000 in petitioner's lawyer trust account—exceeded the programs' allowable limits.

Petitioner requested a hearing on Phillips's behalf, arguing that the $5,000 in petitioner's lawyer trust account was money that Phillips "paid out as fair market consideration" as a deposit for future fiduciary services and that she

---

was eligible for Medicaid and needed the kind of long-term care and assistance provided by hospitals or nursing homes, to choose to receive care and assistance in an adult foster home instead.

therefore had no legal right to the funds. As of November 30, 2007, the date Phillips's case was deemed closed, petitioner had not submitted a final accounting to the court for payment for his services as conservator, had not received court approval for compensation to himself in his role as conservator or attorney, and had not discontinued services to Phillips. Petitioner testified at the hearing that, because the transfer to the trust account was a payment for expenses and services, Phillips was "not entitled to just simply request and have those funds returned to her * * *." He thus argued that the funds could not be counted as an available resource. After the hearing, the ALJ issued a final order affirming the department's decision to close Phillips's medical and service benefits.

The ALJ's order concluded, in part, that, because the $5,000 transfer to the lawyer trust account was made without a court order, Phillips still had a legal interest in the funds. Therefore, in the ALJ's view, even though she did not currently have possession of the money, she had a legal right to request all money back from the lawyer trust account that was not already obligated for professional services rendered as of November 30, 2007, the date of the proposed closure of her benefits. The ALJ also reasoned that the lawyer trust account fell within the department's general definition of a trust but that it did not meet the criteria for being a "qualified trust," and, thus, that the lawyer trust account was not a trust that would be excluded from Phillips's countable resources for purposes of determining financial eligibility for the OSIPM and QMB programs under OAR 461-140-0020(2)(e) and OAR 461-145-0540(3) to (11). The ALJ concluded, in part, that the assets were "countable" because neither OAR 461-140-0020(2)(a) nor (e) applied to render the $5,000 "excluded" assets for determining financial eligibility for OSIPM and QMB. *See* OAR 461-140-0010(1) (an available asset is categorized as either excluded or countable). Accordingly, the ALJ concluded that Phillips's resources exceeded applicable limits and she was, therefore, ineligible for OSIPM and QMB.

Petitioner filed a request for reconsideration arguing, in part, that the ALJ erred in determining that the funds were not excluded under OAR 461-140-0020(2)(a) and that,

due to the nature of the transfer as a "payment-for-services business transaction," the ALJ was wrong in concluding that the money constituted a trust for Phillips. Petitioner further argued that he and Phillips did not have an attorney-client relationship, and he questioned the ALJ's conclusion that the $5,000 was an available "trust fund" resource for Phillips.

On reconsideration, the ALJ concluded that petitioner and Phillips did, in fact, have an attorney-client relationship but again affirmed the department's decision to close Phillips's medical and service benefits. In particular, the ALJ determined that, even if the transfer was characterized as an "advance payment," Phillips had a right to regain possession of the transferred funds because (1) petitioner did not receive a court order for the transfer of funds at issue and thus could not argue that Phillips no longer had a legal interest in the resource, and (2) at the time of the hearing, petitioner had not provided the department with an accounting for services he had performed. Petitioner appeals, and in large part, reasserts his arguments on reconsideration, which we address in turn below.

OSIPM and QMB are medical assistance programs offered by the department to seniors and people with disabilities whose countable resources do not exceed specific resource limits. *See* OAR 461-160-0010(2) ("In the * * * OSIPM, QMB * * * programs, a need group (see OAR 461-110-0630) is not eligible for benefits if the financial group has countable resources above the resource limit."); OAR 461-001-0000(18) (providing that countable assets are available assets that are not excluded). OAR 461-160-0015 (4) and (7) provide that, for a one-person need group,[3] the resource limit for OSIPM is $2,000, and for QMB is $4,000.

The department's administrative rules provide that:

"(1) An available asset, either income or a resource, is categorized as either excluded or countable (defined in OAR 461-001-0000).

---

[3] Phillips qualifies as a "one person need group." OAR 461-110-0630(3) provides that, in the OSIPM and QMB programs, the need group consists of each member of the *financial group*, which is specified in OAR 461-110-0530(4)(b) as being only the individual applying for benefits where that individual lives in a "nonstandard living arrangement" (defined in OAR 461-001-0000(44)), such as the adult foster home where Phillips resides.

"(2) The availability of resources is covered in OAR 461-140-0020.

"* * * * *

"(4) Excluded assets are identified in the rules in this chapter (see divisions 140 and 145 in particular) and are not considered when a client's eligibility and benefit level are determined.

"(5) An available asset not specifically excluded is countable, and its value is used in determining the eligibility and benefit level of a client."

OAR 461-140-0010. Situations in which an available asset is specifically excluded are covered by OAR 461-140-0020(2). That rule provides, in relevant part, that:

"A resource is not available to a client in each of the following situations:

"(a) The client has a legal interest in the resource, but the resource is not in the client's possession and the client is unable to gain possession of it. * * *.

"* * * * *

"(e) Except as provided in OAR 461-145-1540, the resource is included in an irrevocable or restricted trust and cannot be used to meet the basic monthly needs of the financial group."

Petitioner's assignment of error has two parts. He contends first that the ALJ wrongly determined that OAR 461-140-0020(2)(a) does not apply to exclude the resources from eligibility and, second, that the ALJ erred in applying OAR 461-140-0020(2)(e) and OAR 461-145-1540, because the money does not fall within the department's definition of a trust.

With respect to the first part of his argument, referencing OAR 461-140-0020(2)(a), petitioner contends that the ALJ wrongly determined that the $5,000 was not excluded as a resource, because the transfer of funds into petitioner's lawyer trust account was an advance payment for services authorized by ORS 125.425(4) (governing a conservator's power to pay expenses of the protected person). In other

words, petitioner argues that Phillips, through her conservator, made a "customary" and "reasonably necessary" prepayment for fiduciary services, which is currently in the possession of the conservator's lawyer, who is holding the funds in a trust account until such time as a court order authorizes the fiduciaries to accept the payment. Petitioner further argues that, because the transfer was an "advance payment" for Phillips's anticipated care, the conservator would refuse to return the payment, if requested, to Phillips to cover other expenses. Therefore, petitioner contends, although Phillips still has a legal interest in the $5,000, it is not in her possession, she is unable to "gain possession" of it, and we should conclude that, under OAR 461-140-0020(2)(a), the resource is not "countable" for purposes of determining OSIPM and QMB financial eligibility. Petitioner also contends that the ALJ's determination that Phillips could still gain possession of the money was based on a factual finding that petitioner and Phillips had an attorney-client relationship, which he contends is not supported by substantial evidence.

The department responds that petitioner's characterization of the transfer as an advance payment does not change the way that that action is characterized by the department's rules, and it argues that the ALJ's reasoning was correct.

We first consider whether characterizing the transfer as an "advance payment" under the conservatorship statutes would render the funds in the lawyer trust account unavailable under OAR 461-140-0020(2)(a). We conclude that it would not. Again, under OAR 461-140-0020(2)(a), a resource is not available to a client if the client has a legal interest in the resource but the resource is not in the client's possession and the client is unable to gain possession of it. ORS 125.425(4)—addressing a conservator's power to pay the expenses of a protected person—grants a conservator the power to pay any person in advance, without prior court authorization or confirmation, for, generally, the "support, education, care or benefit" of the protected person and dependents of the protected person, "if the conservator reasonably believes that the services will be performed and

where advance payments are customary or reasonably necessary under the circumstances." *See* ORS 125.425(1) - (3) (outlining what services can be paid for in advance under subsection (4)). A separate statute, ORS 125.445(25), allows the conservator to employ an attorney, also without prior court authorization, to assist in the performance of administrative duties. However, through reference to ORS 125.095(3), ORS 125.445(25), unlike ORS 125.425(4), requires court approval before any payment to the attorney of the conservator is made. Further, ORS 125.095(3) requires court approval before payment of compensation is made to a fiduciary, such as a conservator. *See* ORS 125.005(2) (" 'Fiduciary' means a guardian or conservator appointed under the provisions of this chapter * * *.").

Our conclusion is driven by the fact that there was no court order approving the payment, advance or otherwise, of $5,000 of Phillips's funds for administrative expenses or attorney fees. Petitioner contends that the $5,000 transfer to his lawyer trust account for future administrative payments and attorney fees was a valid, "customary or reasonably necessary" advance payment under ORS 125.425(4), and cites a number of reasons why he believes advance payments for those types of fees have been customary in his practice over the years and are reasonably necessary. Petitioner does not dispute, however, that the ultimate payments of fees to the guardian, conservator, and the conservator's attorney are subject to court approval under ORS 125.445(25) and ORS 125.095, and that, until court approval is received, Phillips still has a legal interest in the resource. In this case, there was no court order specifying that the $5,000 transfer to a lawyer trust account was a payment for services to Phillips's fiduciaries or her conservator's attorney. Therefore, we fail to see how the transfer was a payment, or how it could have rendered the funds unavailable to Phillips's conservator to use in any manner. Thus, regardless of whether administrative and attorney fees are expenses that can be paid in advance under ORS 125.425(4), all that petitioner did here was attempt to reserve the funds in a separate account to pay future obligations. The funds remained available to Phillips through her conservator, who had the power to expend them, if necessary,

for any costs associated with the support, education, care, or benefit of Phillips, including the type associated with the OSIPM and QMB programs. *See* ORS 125.425 (authorizing a conservator to pay certain expenses of a protected person).

The fact that Phillips did not have possession of the funds does not change our analysis. Petitioner contends that, because the funds were reasonably necessary to pay for Phillips's anticipated administrative and attorney fees, he would refuse to return those funds and, thus, Phillips could not "gain possession" of them. That petitioner might refuse to return funds to Phillips that legally belonged to her, however, does not render the funds excluded under OAR 461-140-0020(2)(a). The ALJ reasoned that Phillips had a legal right to request all money back from the lawyer trust account that had not already been obligated for professional services rendered as of November 30, 2007, the date of the proposed closure of Phillips's benefits.[4] We agree, and we further note that, if petitioner continued to refuse to return Phillips's funds, the court could terminate the conservatorship, direct delivery of the funds back to Phillips, and appoint a new conservator. *See* ORS 125.420 (a conservator may permit the protected person to retain possession and control of funds for living requirements); ORS 125.525 (an order terminating a conservatorship shall direct the conservator to deliver immediately to the protected person all assets that are not required for expenses of administration).[5]

---

[4] The ALJ recognized in his order that, although petitioner had not submitted an accounting at the time of the hearing, he did testify at the hearing that as of November 30, 2007 (the date of the proposed closure of Phillips's benefits), petitioner had performed $2,400 in services for Phillips for which he had not been paid. Therefore, at a minimum, petitioner could have returned $2,600 to claimant that would not have been excluded under OAR 461-140-0020(2)(a). That amount, in combination with the $1,800.78 of remaining funds in Phillips's personal account, would still have exceeded the resource limits for OSIPM and QMB.

[5] The ALJ came to a slightly different conclusion as to why OAR 461-140-0020(2)(a) does not apply. The ALJ's order provided that, although Phillips, who has a legal right to the $5,000, does not currently have possession of it, that "does not mean that claimant is unable to gain possession of it. *See* ORS 125.450." ORS 125.450 addresses voidable transactions, and provides that any sale or encumbrance to a conservator or a conservator's attorney, or other transaction affected by a substantial conflict of interest is voidable unless the transaction is approved by the court. We infer the ALJ's reasoning to be that the transfer, because it was done without a court order authorizing payment, was a voidable advance payment under ORS 125.450 and that, because the payment was voidable, Phillips could have gained possession of the money by rendering the payment void. Given our

We turn to petitioner's argument that the ALJ's determination that Phillips could still gain possession of the money was based on an unsupported factual finding that petitioner and Phillips had an attorney-client relationship. In the final order on reconsideration, the ALJ stated:

"The conservator's [transfer on or about October 31] of $5,000 of claimant's funds to the lawyer trust account was done without a court order. Claimant still has a legal interest in her money that was placed in the lawyer trust account. Claimant does not currently have possession of the money placed into that account by the conservator. However, that does not mean that claimant is unable to gain possession of it. *See* ORS 125.450."

Thus, the ALJ's reasoning is based on the lack of a court order, and not on petitioner and Phillips's purported attorney-client status. In any event, until petitioner received a court order authorizing payment for services, the funds belonged to Phillips and remained available to her regardless of the "hat" he was wearing in holding the funds in the lawyer trust account and regardless of whether the funds were earmarked to pay for future services by petitioner in any of his myriad roles. *See* Oregon Rules of Professional Conduct 1.15.1 (providing that a lawyer shall promptly deliver to the *client* or *third person* any funds deposited in a lawyer trust account that the client is entitled to receive). Thus, we conclude that whether there is substantial evidence that petitioner and Phillips had an attorney-client relationship is beside the point. Because the transaction was not a payment authorized by a court order for fiduciary services, Phillips had the ability to regain possession of the $5,000 in petitioner's lawyer trust account. The ALJ did not err in determining that the resource was not excluded under OAR 461-140-0020(2)(a), and was, thus, "countable." OAR 461-140-0010(1).

Petitioner next argues that the ALJ wrongly concluded that the $5,000 in the lawyer trust account fell within the applicable definition of a trust and thus constituted

---

conclusion that the transfer of $5,000 to a lawyer trust account, absent any court order authorizing or specifying the purpose of that transfer, was not a "payment" at all, we do not address whether the transfer was a voidable transaction under ORS 125.450.

countable trust resources toward OSIPM and QMB eligibility. In support of that contention, petitioner again assigns significance to the ALJ's purported determination that petitioner had an attorney-client relationship with Phillips. In the alternative, petitioner contends that, if the finding of an attorney-client relationship is sustained, the ALJ misapplied OAR 461-140-0020(2)(e) and OAR 461-145-0540 to the funds because "attorney-client trust funds" are not "trusts" as contemplated by that rule. We reject both arguments without discussion.

Affirmed.